UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULKAREEM TAHER AHMED AL-SADEAI,<br><br>Petitioner,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); TAE D. JOHNSON, Acting Director for ICE; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); DAVID PETER PEKOSKE, Acting Secretary of DHS; JOHN D. HOLLIDAY, Counsel for DHS; U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); TROY A. MILLER, Acting Commissioner of CBP; EXECUTIVE OFFICE OF IMMIGRATION REVIEW ("EOIR"); JEAN KING, Acting Director of the EOIR; FEDERAL BUREAU OF INVESTIGATIONS ("FBI"); CHRISTOPHER A. WRAY, Director for the FBI; | CASE NO. 21-cv-00296-GPC-MDD<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1.] |

- 1

| | |
|---|---|
| 1 2 3 4 5 6 | JASON J. BEACHY, Special Agent in Charge of the San Diego FBI Field Office; JOHN DOE 1, FBI San Diego Agent; JOHN DOE 2, FBI San Diego Agent;<br><br>　　　　　Respondents. |

Petitioner Abdulkareem Taher Ahmed Al-Sadeai[1] ("Petitioner"), a person detained at the Imperial Regional Detention Facility in the custody of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 ("Petition"[2]) arguing that his continued detention and bond redetermination hearing violates his rights under the Due Process Clause and Equal Protection component of the Fifth Amendment.  On March 19, 2021, Respondent Immigration and Customs Enforcement ("ICE" or "the Government") filed a response to the petition.  On May 12, 2021, Petitioner filed a reply.  For the reasons that follow, the Petition is **GRANTED**.

**I.　　Background**

　　**a. Factual History**

Petitioner is a citizen of Yemen who is currently detained at the Imperial Regional Detention Facility in Calexico, California.  ECF No. 1 ¶¶ 26, 52.[3]  In 2009, Petitioner began working for the Qatar Embassy in Yemen as a driver for the ambassador of Qatar.  *Id.* ¶ 43.  In December 2012, while driving the ambassador of Qatar, Petitioner accidentally hit a Houthi leader,[4] causing the leader serious

---

[1] The Government notes that Petitioner's name is spelled "Al-Sedeai" on documents he has filed. ECF No. 3 at 1 n.2.

[2] Petitioner's filing also included a civil complaint for damages and a declaratory judgment. This order is not intended to resolve the issues presented in the civil complaint.

[3] These facts are drawn from the Petition.

[4] Yemen is currently embroiled in a civil conflict between Houthi forces and the Republic of Yemen Government.  Approximately 80% of the population of Yemen lives in territory under

injury. *Id.* Petitioner later worked at the United States embassy in Yemen as a security guard for a contracted security company. *Id.* ¶ 45. On approximately June 1, 2015 and again multiple times thereafter, Petitioner was kidnapped and attacked by Houthis who had discovered he was the driver who had hit the Houthi leader and had worked for the Qatar and United States embassies. *Id.* ¶¶ 46. Fearing for his life, Petitioner attempted to move to southern Yemen, but discovered there was no safe place for him to live because individuals from northern Yemen are automatically taken to the police station and then turned over to the Houthis. *Id.* ¶ 47. On about November 23, 2019, Petitioner left Yemen with the intent to seek asylum in the United States. *Id.* ¶ 48.

On November 1, 2020 Petitioner attempted to enter the United States without inspection near Calexico, California. *Id.* ¶ 49; ECF No. 3-1 at 2. Petitioner was apprehended and placed in expedited removal proceedings. ECF No. 1 ¶¶ 50, 52; ECF No. 3-1 at 4. Petitioner was subsequently detained at the Imperial Regional Detention Facility. ECF No. 1 ¶ 52. During this time, Petitioner received a credible fear interview[5] and the asylum officer determined that Petitioner had stated a credible fear of persecution or torture on the basis of political opinion. ECF No. 1-2 at 35–40, Exh. G. Petitioner was thereafter placed in removal proceedings under 8 U.S.C. § 1182. ECF No. 3-1 at 5.

### b. Procedural History

On January 7, 2021, ICE rendered its custody determination and determined Petitioner would be detained pursuant to 8 U.S.C. § 1226(a) and simultaneously denied Petitioner parole. ECF No. 1-2 at 44–48, Exh. I. On January 21, 2021,

---

Houthi control. *See* U.S. State Dep't, 2020 Country Reports on Human Rights Practices: Yemen (2020), https://www.state.gov/reports/2020-country-reports-on-human-rights-practices/yemen/.

[5] Petitioner states that he was denied access to counsel during his credible fear interviews. ECF No. 1 ¶¶ 53, 54. While the Government was required to permit "[a]ny person or persons with whom [Petitioner] chooses to consult" to be present at the interview, 8 C.F.R. § 208.30(d)(4); 8 U.S.C. § 1225(b)(1)(B)(iv), this issue does not appear to give rise to any of Petitioner's claims because he was determined to have a credible fear.

Petitioner appeared for a bond redetermination hearing before an Immigration Judge ("IJ"). ECF No. 1 ¶ 60. Petitioner had previous bond hearings scheduled,[6] but the Government had received a continuance to conduct further investigation, which included a Federal Bureau of Investigation ("FBI") interview of Petitioner in custody. *Id.* ¶¶ 56, 58. At the hearing, the Government submitted a memorandum from the FBI that stated that Petitioner claims to be from Sana'a Yemen, an area of Yemen that "has been known as a security concern due to multiple terrorist organizations fighting for control of the capital." ECF No. 1-4, Exh. K ("FBI Memo"). The memorandum also stated that from 2017 to 2019, Petitioner lived in Hadhramaut, Yemen, an "area of Yemen known as an al-Qa'ida in the Arabian Peninsula stronghold, which requires a higher level of suspicion and investigation of the people from the locale." *Id.* Additionally, the memorandum noted that the FBI required additional time to analyze information from Petitioner's email and cell phone and that several circumstances impacted the FBI's "ability to conduct a timely thorough assessment of [Petitioner] in the interest of national security." *Id.* The memorandum concluded by noting that the FBI supported continuing to detain Petitioner while it completes the assessment. *Id.* Petitioner presented evidence in support of his request for bond in the form of financial statements, documents supporting his family ties, and declarations from family members, and highlighted that Petitioner has no criminal history. ECF No. 1-2 at 49–92; ECF No. 1-3, Exh. J.

The IJ denied Petitioner's request for bond. ECF No. 1-4 at 7–9, Exh. L ("IJ Ord."). The IJ explained his reasoning in a short order, explaining that:

> National security concerns raised by the Government and investigation is ongoing. Court cites Carlson v. Landon 342 U.S. 524 and Matter of Patel, 15 I&M 666. Respondent has not carried his burden to show not a danger to community or threat to national security.

---

[6] The IJ bond memorandum indicates that previous custody redetermination hearings were held on December 9, 2020 and December 22, 2020. ECF No. 3-1 at 16.

*Id.* On January 28, 2021, Petitioner appealed the bond redetermination decision to the Board of Immigration Appeals ("BIA"). ECF No. 3-1 at 20–23; ECF No. 4-2 at 7 n.9. After Petitioner appealed, the IJ more fully set forth his reasoning for the denial of bond in a bond memorandum issued February 1, 2021. ECF No. 3-1 ("IJ Bond Memo") at 16–19. In the bond memorandum, the IJ reiterated that "[a] respondent in a custody hearing under section 236(a) of the Immigration and Nationality Act must establish to the satisfaction of the immigration judge that he does not present a danger to persons or property, is not a threat to national security and does not pose a risk of flight." *Id.* at 16. The IJ applied *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006), and determined that Petitioner poses a national security concern and alternatively is "an extreme flight risk." *Id.* at 16–17. The IJ considered the FBI memorandum as well as Petitioner's lack of fixed address, length of residence, and employment history in the United States. *Id.* at 17. The IJ also noted that Petitioner's lawful permanent resident and U.S. citizen relatives would be unable to extend immigration benefits to him, that Petitioner had not presented a sponsor with sufficient income or with whom he had sufficiently strong ties, and that Petitioner had entered the United States illegally after making intricate travel arrangements despite having a clear understanding of legal immigration procedures. *Id.* at 17–18.

The BIA has not yet rendered a decision on Petitioner's appeal of the IJ decision and Petitioner remains detained. ECF No. 1 ¶ 62; ECF No. 4-2 at 2.

**II.    Legal Standard**

Under 28 U.S.C. § 2241, federal courts have jurisdiction to hear habeas corpus petitions from noncitizens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). District courts do not have jurisdiction to review final orders of removal or discretionary decisions made by the Attorney General, but do have jurisdiction to

decide statutory or constitutional challenges to their civil immigration detention and review bond hearings for legal or constitutional error. *See id.* at 687–88; *Puri v. Gonzales*, 464 F.3d 1038, 1041–42 (9th Cir. 2006); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

### III. Discussion

#### a. Administrative Exhaustion

As Petitioner's appeal of the IJ's bond redetermination decision is pending at the BIA, the Government argues that this Court should dismiss or stay Petitioner's habeas challenge on prudential grounds. ECF No. 3 at 9. Petitioner asserts that he need not exhaust administrative remedies in these circumstances. ECF No. 4-2 at 7–8.

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, administrative exhaustion by those seeking relief under § 2241 is a prudential, not jurisdictional, prerequisite in the Ninth Circuit, and can thus be waived. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Futility is one of the grounds for waiver. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). An action is futile if the BIA's view is "already set" or the outcome is "very likely." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 74748 (9th Cir. 1991) (holding petitioner need not exhaust administrative remedies to challenge a translation policy which the BIA had announced and reaffirmed).

Here, Petitioner's appeal of his denial of bond is pending before the BIA. However, it is "very likely" that the BIA will affirm the IJ decision as to at least some of the grounds raised in the Petition, rendering Petitioner's administrative appeal of those issues futile. Specifically, BIA precedent places the standard of proof in bond proceedings on the detained noncitizen. *See Matter of Adeniji*, 22

I&N Dec. 1102, 1116 (BIA 1999); *Matter of Guerra*, 24 I&N Dec. at 40. The agency has therefore adopted a clear position on this issue which is unlikely to change upon review of Petitioner's appeal. *See Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1234 (9th Cir. 2007).

Accordingly, because Petitioner's appeal to the BIA is likely to be futile, the Court will not dismiss or stay the Petition on the grounds of failure to exhaust administrative remedies.

### b. Whether Placing the Burden of Proof on Petitioner Pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) Violated his Right to Due Process

Section 1226(a) is silent on which party bears the burden of proof at a custody redetermination hearing and the quantum of evidence necessary to satisfy that burden. *See* 8 U.S.C. § 1226(a). The BIA has interpreted § 1226(a) to place "[t]he burden . . . on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." *In re Guerra*, 24 I&N Dec. at 40; *accord In re Adeniji*, 22 I&N Dec. at 1116 (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings").

In the § 1226(a) custody hearing context, however, the Ninth Circuit has held that the Constitution requires placing the burden of proof on the Government to show, by clear and convincing evidence, that detention is justified. *Singh*, 638 F.3d at 1203. In *Singh v. Holder*, the Ninth Circuit reasoned that "due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008)). Relying on Supreme Court jurisprudence on the constitutional safeguards required in other civil detention contexts, the Ninth Circuit held that due process demanded (1) the government carry the burden at §

1226(a) bond redetermination hearings, and (2) that it do so by clear and convincing evidence. *Id.* at 1204. The Supreme Court's subsequent statutory interpretation-based decision in *Rodriguez v. Jennings* did not jeopardize the holding in *Singh* that the due process clause requires the government to bear this burden. *See Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020).

The Government contends that *Singh* is distinguishable from the present case because that case "concerned the extended detention of a lawful permanent resident in petition-for-review proceedings." ECF No. 3 at 7. The Government also suggests that the cases are distinguishable because Petitioner entered without inspection and with the assistance of a smuggler. *Id.* at 7–8. The Court therefore must consider whether *Singh*'s due process holding is limited to those detained during extended petition-for-review proceedings, or whether it is applicable to individuals like Petitioner who are detained while their removal case is ongoing before the IJ.

In *Singh*, the Ninth Circuit found that the IJ had properly allocated the burden of proof to the Government, referencing its holding in *Casas-Castrillon* that "the burden of establishing whether detention is justified falls on the government." *Singh*, 638 F.3d at 1203 (citing *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008)). The court in *Casas* had reasoned that "prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful.'" *Casas-Castrillon*, 535 F.3d at 951 (quoting *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)).

It is true that both Singh and Casas had filed petitions for review; Singh had been detained for nearly four years, and Casas for nearly seven. *Singh*, 639 F.3d at 1201, 1203; *Casas-Castrillon*, 535 F.3d at 945, 950. Petitioner, in contrast, is still in removal proceedings and has been detained for approximately five months. ECF No. 4-2 at 3. But as the Ninth Circuit has recognized, that, with respect to the

stage of proceedings, this is "a distinction without difference" when it comes to the due process implications of immigration detention.[7] *Rodriguez v. Robbins*, 715 F.3d 1127, 1139 (9th Cir. 2013). In that case, which considered whether bond hearings after six months in custody were required for noncitizens subject to mandatory detention, the court determined that "the government does not present a persuasive reason why the same protections recognized in *Casas* should not apply to pre-removal order detainees." *Id; cf. Diouf v. Napolitano*, 634 F.3d 1081, 1087 (9th Cir. 2011) (*Diouf II*).

The Court is accordingly not convinced that *Singh* is inapplicable to initial custody redetermination hearings for individuals detained pursuant to Section 1226(a). Immigration detention is inconsistent with due process unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). The greater the potential deprivation of liberty, the greater level of procedural protections required. *Cf. Singh*, 638 F.3d at 1203–04 (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)) ("[I]t is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant."). The Ninth Circuit noted in *Singh* that "the primary function of a standard of proof is to properly 'allocate the risk of an erroneous decision among litigants based upon the competing rights and interests involved.'" *Id.* at 1204 (quoting *Tijani*, 430 F.3d at 1244 (Tashima, J., concurring)).

The Government has not demonstrated that the rights and interests involved here merit a different allocation of the risk than in *Singh*. First, the Court notes that the Government appears to have made the opposite argument in

---

[7] While the statutory interpretation elements of this decision have been undermined by *Rodriguez v. Jennings*, *see Aleman Gonzalez*, 955 F.3d at 775, the Court finds that its discussion of detained individuals' liberty interests remains useful in considering individuals' due process rights.

*Singh* and *Diouf II*, contending that individuals detained after their removal hearings had a lesser liberty interest than those who were at an earlier stage of their removal proceedings. *Id.*; *Diouf II*, 634 F.3d at 1087. In any event, while individuals who file petitions for review are likely to have been detained for longer than those who are still in removal proceedings before the IJ, those in removal proceedings still face the prospect of months-long detention, a severe deprivation of liberty that is countenanced in only limited circumstances outside of the criminal context. *See Zadvydas*, 533 U.S. at 690. As exemplified by Petitioner's case, removal proceedings can stretch on for months.[8] The Government's interest in detention at the time of initial bond hearings is also comparable, if not weaker, than at *Casas* hearings, which take place after the noncitizen has already been ordered removed. *See Casas-Castrillon*, 535 F.3d at 951. Accepting the Government's proposed distinction would lead to the odd, and constitutionally unjustified, result in which the burden of proof would shift upon the filing of a petition for review, despite there being no reason to conclude that the Government's interest in detention decreases or the risk of an incorrect detention decision regarding the same individual changes at all. *See Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1061 (N.D. Cal. 2020), *appeal dismissed sub nom. Perez v. McAleenan*, No. 20-15511, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) (noting that "[s]uch a system would be illogical").

      The Government's other suggested means of distinguishing *Singh*, that Petitioner entered without inspection and with the help of a smuggler, has little bearing on the constitutionally required placement of the burden of proof. These facts may well be relevant to whether the Government can meet its burden of

---

[8] The Supreme Court estimated in *Demore v. Kim* that detention during removal proceedings "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Demore v. Kim*, 538 U.S. 510, 530 (2003). The Government has since admitted that the statistics it provided in *Demore*, upon which this estimate was based, were inaccurate. *Jennings v. Rodriguez*, 138 S. Ct. 830, 869 (2018) (Breyer, J., dissenting).

showing that Petitioner is a flight risk or danger to national security with clear and convincing evidence, but it does not affect the due process protections to which Petitioner is entitled.

The Government's reliance on *Demore* is also inapposite. In finding mandatory detention during removal proceedings permissible for certain "criminal aliens," the Supreme Court extensively cited statistics regarding such noncitizens' failure to appear at removal hearings and considered these statistics in concluding that the Due Process Clause did not require individualized bond determinations for persons detained under 8 U.S.C. § 1226(c). *Demore v. Kim*, 538 U.S. 510, 518–20, 528 (2003). The Government has provided no support for its assertion that creating a presumption of detention for a class of noncitizens not subject to mandatory detention sufficiently balances the noncitizens' strong liberty interest with the government's interest in detention. Adequate procedural protections, including an appropriate allocation of the burden of proof, is therefore required to ensure the Government's justifications for detention outweigh Petitioner's interest in freedom from confinement. *See Casas-Castrillon*, 535 F.3d at 950.

Accordingly, the Court finds that noncitizens still face such a significant possible deprivation of liberty at the time of their initial bond hearing under Section 1226(a) that the Due Process Clause requires the burden of proof to justify detention be placed on the Government, following *Singh*. Other district courts have come to the same conclusion. *See Ixchop Perez*, 435 F. Supp. 3d at 1061 (applying *Singh* burden of proof allocation to Section 1226(a) initial bond hearing); *Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571, 576 (N.D. Cal. 2020), *appeal dismissed*, No. 20-16195, 2020 WL 5558491 (9th Cir. Sept. 10, 2020) (same).

The Court therefore finds that the IJ's placement of the burden of proof on Petitioner violated the Fifth Amendment Due Process Clause.

\ \ \

\ \ \

### c. Whether Petitioner was Prejudiced

Having identified constitutional error, the Court next examines whether the error was prejudicial. *See Singh*, 638 F.3d at 1205 (analyzing whether IJ's application of an erroneous standard of proof at bond hearing under Section 1226(a) prejudiced petitioner).[9]

The BIA directs IJs to consider the following factors in determining whether an immigrant is a flight risk or poses a danger to the community: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *In re Guerra*, 20 I&N Dec. at 40. The Government contends that Petitioner was not prejudiced because considered the appropriate factors. ECF No. 3 at 9. Petitioner contends that he demonstrated strong family ties in the United States and that the mere fact that he is from Yemen was not sufficient to demonstrate that he is a national security concern or a flight risk. ECF No. 4-2 at 8–11.

Here, Petitioner had both positive and negative equities relevant to the *In re Guerra* framework. Petitioner submitted evidence of his ties to family in the United States and declarations from relatives supporting his character. ECF No. ECF No. 1-2 at 49–92; ECF No. 1-3, Exh. J. Although the IJ relied heavily on his conclusion that Petitioner did not identify sufficient sponsors and the fact that Petitioner had planned in advance to enter the country without inspection, it is not

---

[9] Not all courts, however, have required a showing of prejudice. *See Darko v. Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018) (granting habeas relief upon identifying error in allocation of burden of proof without considering prejudice to petitioner).

clear from the IJ's memorandum that the evidence would be sufficient to satisfy the Government's burden of demonstrating flight risk with clear and convincing evidence under *Singh*. IJ Bond Memo at 17–18. Likewise, the IJ's brief recounting of the national security grounds for denying bond does not indicate whether the FBI memorandum referencing Petitioner's places of birth and previous residence, without additional information, constituted "clear and convincing evidence" that Petitioner poses a risk to national security. *Id.* at 17; *cf. Aparicio-Villatoro v. Barr*, No. 6:19-CV-06294-MAT, 2019 WL 3859013, at *7 (W.D.N.Y. Aug. 16, 2019) (finding noncitizen prejudiced by IJ's application of incorrect evidentiary burden under § 1226(a) where the alien had a mixed bag of favorable and unfavorable equities); *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018) ("If the government had borne the burden of proof, the IJ could well have found that [petitioner] was not dangerous based on a single misdemeanor conviction."). While it is not at all obvious that the IJ would come to a different conclusion if the burden of proof were shifted, the evidence presented does not foreclose the possibility that the Government failed to meet its burden.

Because "the standard of proof could well have affected the outcome of the bond hearing," *Singh*, 638 F.3d at 1205, the Court finds that Petitioner suffered prejudice. The Court determines that the appropriate remedy in this case will be to order that the agency either (1) hold a further custody redetermination hearing consistent with this order within 45 days, or (2) release Petitioner from custody.[10]

---

[10] Because the Court determines that Petitioner is entitled to a new bond hearing based on the IJ's improper allocation of the burden of proof, the Court need not reach Plaintiff's arguments related to equal protection or the Government's parole authority. Likewise, because Petitioner's argument that he is subject to prolonged detention would entitle him to, at most, another bond hearing and not immediate release, the Court declines to address this argument as well. *See Casas-Castrillon*, 535 F.3d at 949; *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) ("[I]t is true that [petitioner's] detention lacks a certain end date, but this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in *Zadvydas*.").

### IV. Conclusion

For the reasons set forth above, the Petition for Writ of Habeas Corpus is **GRANTED**. Petitioner shall be released from custody unless within 45 days the agency provides Petitioner a new custody redetermination hearing applying the standard set forth in this order.

**IT IS SO ORDERED.**

Dated: May 18, 2021

Hon. Gonzalo P. Curiel
United States District Judge