1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10

11    ADBULKAREEM TAHER AHMED AL-        Case No. 3:21-cv-00296-GPC-MDD
      SADEAI,
12                                        **ORDER DENYING MOTION FOR**
                               Plaintiff,  **ATTORNEYS' FEES**
13
14    v.                                   **[ECF No. 14]**

15    US. IMMIGRATION AND CUSTOMS
      ENFORCEMENT et al.,
16
                              Defendants.
17

18        Before the Court is Abdulkareem Taher Ahmed Al-Sedeai's[1] ("Plaintiff" or "Al-

19    Sedeai") Motion for Attorney's Fees under the Equal Access to Justice Act ("EAJA")

20    pursuant to 28 U.S.C. § 2412.  ECF No. 14 ("Motion" or "Mot.").  Respondent

21    Immigration and Customs Enforcement ("ICE" or "the Government") filed an opposition,

22    and Plaintiff filed a reply.  ECF Nos. 17 ("Opposition" or "Opp."), 18 ("Reply").  The

23

24    _____

25

26    [1] The Government notes that Plaintiff's name is spelled "Al-Sedeai" on official documents he has filed
      and provided.  ECF No. 3 at 1 n.2.  In this opinion, on occasions to employ Plaintiff's name, the Court
27    will use this official spelling.

28                                              1

1  Court stayed the motion pending the Ninth Circuit's issuance of an opinion in a case,

2  *Vargas v. Wolf,* No.21-15439, and later lifted the stay when the case was dismissed.  ECF

3  Nos. 22, 24.

4       The Court finds this motion suitable for disposition without oral argument pursuant

5  to Civ. L.R. 7.1(d)(1) and accordingly VACATES the hearing on this matter currently set

6  for March 28, 2025.

7       For the reasons that follow, the Court hereby DENIES Plaintiff's motion.

8  **I.       BACKGROUND**

9       The underlying action involves Plaintiff's habeas corpus petition to this Court

10  ("Petition") pursuant to 28 U.S.C. § 2241, which the Court granted on May 18, 2021.

11  ECF Nos 1, 6.  The following is an account of the factual and procedural history in this

12  case, as needed to understand the current Motion.

13            A. Factual history

14       Plaintiff is a citizen of Yemen.  In December 2012, while working for the Qatar

15  Embassy in Yemen as a driver for the ambassador of Qatar, Plaintiff accidentally hit a

16  Houthi[2] leader, inflicting serious injury.  ECF No. 1 ¶ 43.  Plaintiff later worked at the

17  U.S. Embassy in Yemen as a security guard for a contracted security company.  *Id.* ¶ 45.

18  On approximately June 1, 2015, and again several times thereafter, Plaintiff was

19  kidnapped and attacked by Houthis who had discovered he was the driver who had hit the

20  Houthi leader and who had worked for the Qatar and U.S. embassies.  *Id.* ¶ 46.  Fearing

21  for his life and safety, Plaintiff attempted to move to southern Yemen, but discovered that

22  even there, individuals suspected to be from northern Yemen are automatically turned

23

24

25

26  [2] Yemen is currently in the middle of a civil conflict between Houthi forces and the Republic of Yemen
    Government. *See* U.S. State Dep't, 2022 Country Reports on Human Rights Practices: Yemen (2022),
27  https://www.state.gov/reports/2022-country-reports-on-human-rights-practices/yemen/.

28                                                              21-cv-00296-GPC-MDD

1   over to the Houthis.  On about November 23, 2019, Plaintiff left Yemen with the intent to

2   seek asylum in the United States.  *Id.* ¶ 48.

3        On November 1, 2020, Plaintiff attempted to enter the United States without

4   inspection near Calexico, California.  *Id.* ¶ 49.  He was apprehended and placed in

5   expedited removal proceedings and subsequently detained at the Imperial Regional

6   Detention Facility.  *Id.* ¶¶ 50, 52; ECF No. 3-1 at 4. During this time, Plaintiff received

7   asserted an asylum claim and was afforded a credible fear interview by an asylum officer.

8   *Id.* ¶¶ 6, 51, 53-54.  The officer determined that Plaintiff had stated a credible fear of

9   persecution or torture on the basis of political opinion.  ECF No. 1-2 at 35-40, Ex. G.

10  Plaintiff was thereafter placed in removal proceedings before an Immigration Judge

11  ("IJ") under 8 U.S.C. § 1182.

12       B. Procedural history

13       On January 7, 2021, ICE determined that Plaintiff would be detained pursuant to 8

14  U.S.C § 1226(a) and denied Plaintiff parole.  ECF No. 1-2 at 44-48, Ex. I.  On January

15  21, 2021, Plaintiff appeared for a bond redetermination hearing before an IJ.  ECF No. 1

16  ¶ 60.  At the hearing, the Government submitted a memorandum from the Federal Bureau

17  of Investigation ("the FBI") that stated that Plaintiff claims to be from Sana'a, Yemen, an

18  area that "has been known as a security concern due to multiple terrorist organizations

19  fighting for control of the capital."  ECF No. 1-4, Ex. K ("FBI Memo").  The FBI Memo

20  also stated that from 2017 to 2019, Plaintiff lived in Hadhramaut, Yemen, an area

21  "known as an al-Qa'ida in the Arabian Peninsula stronghold, which requires a higher

22  level of suspicion and investigation of the people from the locale."  *Id*.  The FBI Memo

23  noted that the FBI required more time to analyze data from Plaintiff's email and

24  cellphone and that the FBI supported the detention of Plaintiff while it completed its

25  assessment.  *Id.*  For his part, Plaintiff presented evidence in support of his request for

26  bond in the form of financial statements, documents supporting his family ties to the

27

28

3

1    U.S., and declarations from family members, and emphasized his lack of criminal history.

2    ECF No. 1-2 at 49-92; ECF No. 1-3, Ex. J.  The same day, the IJ denied Plaintiff's

3    request for bond.  ECF No. 1-4 at 7-9, Ex. L ("IJ Order").  The IJ reasoned that

4    "[n]ational security concerns raised by the Government and investigation is [*sic*]

5    ongoing."  *Id*.  And the IJ found that "Respondent has not carried his burden to show not

6    a danger [*sic*] to community or threat to national security."  *Id*.

7         On January 28, 2021, Plaintiff appealed the bond determination decision to the

8    Board of Immigration Appeals ("BIA").  ECF No. 3-1 at 20-23; ECF No. 4-2 at 7 n.9.

9    After Plaintiff appealed, the IJ issued a more detailed reasoning for the denial of bond in

10   a bond memorandum.  ECF No. 3-1 ("IJ Bond Memo") at 16-19.  In the IJ Bond Memo,

11   the IJ reaffirmed the position that "[a] respondent in a custody hearing under section

12   236(a) of the Immigration and Nationality Act must establish to the satisfaction of the

13   immigration judge that he does not present a danger to persons or property, is not a threat

14   to national security and does not pose a risk of flight."  *Id.* at 16.  The IJ applied the

15   multi-factor test from *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006) to conclude that

16   Petitioner poses a national security concern and alternatively is an "extreme flight risk."

17   *Id.* at 16-17.

18        On February 18, 2021, Plaintiff filed a petition for writ of habeas corpus pursuant

19   to 28 U.S.C. § 2241, seeking an order directing the Government to release him from

20   custody or, in the alternative, provide a new custody redetermination hearing.  ECF No.

21   1.  The Government opposed the Petition, advancing three main arguments: (1) national

22   security concerns existed due to Abdulkareem's nationality; (2) Abdulkareem had the

23   burden of establishing he was not a flight risk or danger to the community; and (3)

24   Abdulkareem was required to exhaust direct appeals before filing a petition for writ of

25   habeas corpus.  ECF No. 3 at 6-7.  On May 18, 2021, this Court granted Abdulkareem's

26   Petition.  ECF No. 6.  Specifically, this Court held that "the IJ's placement of the burden

27

28

21-cv-00296-GPC-MDD

1    of proof on Petitioner [to show he was not a flight risk or danger to national security]

2    violated the Fifth Amendment Due Process Clause." *Id*. at 12.  The Court further held

3    that BIA review prior to District Court review would have been "futile," and thus

4    Petitioner was not required to exhaust administrative remedies prior to filing his Petition

5    in the District Court. *Id*. at 6-7.  The Court granted Plaintiff's petition and ordered

6    Plaintiff to be released from custody or provided a new custody redetermination hearing

7    within 45 days applying the standard set forth in the Order. *Id*.

8    On July 15, 2021, the Government appealed the Court's order to the Ninth Circuit.

9    ECF No. 9.  On September 22, 2021, the Government filed a motion to voluntarily

10   dismiss its appeal, and on January 21, 2022, the Ninth Circuit entered an order granting

11   the Government's motion.  ECF No. 11.

12   On February 18, 2022, Plaintiff filed a motion for attorney's fees under the EAJA

13   seeking $107,976.86 in attorney's fees and costs.  ECF No. 14 ("Motion" or "Mot.").

14   The Government opposed the motion, arguing that the Government's position was

15   substantially justified and that even if Ms. Goldberg were entitled to fees, any award

16   should not exceed the statutory maximum.  ECF No. 17.  The Government also raised the

17   possibility of a stay to allow for the Ninth Circuit to reach a decision in *Vargas v.*

18   *Mayorkas*, No. 20-16237. *Id*.  On September 27, 2022, the Court issued a stay to allow

19   for a resolution to what was then titled *Vargas v. Wolf*, No. 21-15439.  ECF No. 22.  The

20   case was dismissed with a stipulation (sealed).

21   On September 16, 2024, the Court lifted the stay on proceedings and ordered a

22   Joint Status report.  ECF No. 24.  A report was filed on September 27, 2024, with parties

23   disagreeing on whether and how the Ninth Circuit's holding in *Rodriguez Diaz v.*

24   *Garland*, 53 F.4th 1189 (9th Cir. 2022) applied.  ECF No. 25.  The Court ordered

25   supplemental briefing, ECF No. 26, which the parties then submitted, ECF Nos. 29, 30,

26   31.

27

28

1   Upon review of the moving papers and for the reasons below, the Court DENIES

2   the Motion.

3   **II.    LEGAL STANDARD**

4   Under EAJA, courts "shall award to a prevailing party other than the United States

5   fees and other expenses . . . unless the court finds that the position of the United States

6   was substantially justified or that special circumstances make an award unjust." 28

7   U.S.C. § 2412(d)(1)(A). To prevail on a motion for attorney's fees under the EAJA, "it

8   must be shown that (1) the plaintiff is the prevailing party; (2) the government has not

9   met its burden of showing that its positions were substantially justified or that special

10   circumstances make an award unjust; and (3) the requested attorney's fees and costs are

11   reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

12   "[T]he 'position of the United States' means, in addition to the position taken by

13   the United States in the civil action, the action or failure to act by the agency upon which

14   the civil action is based." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001)

15   (citing 28 U.S.C. § 2412(d)(2)(D) and *Comm'r INS v. Jean*, 496 U.S. 154, 159 (1990)

16   (explaining that the "position" relevant to the inquiry "may encompass both the agency's

17   prelitigation conduct and the [agency's] subsequent litigation positions")).  Thus, the

18   court focuses on two questions: "first, whether the government was substantially justified

19   in taking its original action; and, second, whether the government was substantially

20   justified in defending the validity of the action in court." *Kali v. Bowen*, 854 F.2d 329,

21   332 (9th Cir. 1988).

22   A position is "substantially justified" if it has a reasonable basis in law and fact.

23   *Pierce v. Underwood*, 487 U.S. 552, 565-66 (1988); *United States v. Marolf*, 227 F.3d

24   1156, 1160 (9th Cir. 2002).  Substantially justified has been interpreted to mean "justified

25   to a degree that could satisfy a reasonable person." *Al-Harbi v. INS*, 284 F.3d 1080, 1084

26   (9th Cir. 2002) (quoting *Pierce*, 487 U.S. at 565).  "Conceivably, the Government could

27

28

21-cv-00296-GPC-MDD

1    take a position that is not substantially justified, yet win; even more likely, it could take a

2    position that is substantially justified, yet lose." *Pierce*, 487 U.S. at 568.  In short, if

3    reasonable minds could differ on the merits of the case, the Ninth Circuit will not reverse

4    a district court's decision to deny EAJA attorney fees. *Gonzalez v. Free Speech*

5    *Coalition*, 408 F.3d 613, 621 (9th Cir. 1995).

6          The government bears the burden of proving that its position, both in the

7    underlying administrative proceedings and in the subsequent litigation, was substantially

8    justified. *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013).  "The test is not whether

9    the government was correct, but whether it was for the most part justified in taking the

10   position that it did… A position that was not contrary to clearly established law is thus

11   substantially justified." *See Meza-Vasquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021)

12   (internal quotation marks and citation omitted).  "That the government lost (on some

13   issues) does not raise a presumption that its position was not substantially justified."

14   *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019).  However,

15   if the government violates its own regulations, or fails to acknowledge settled circuit law,

16   this weighs heavily against substantial justification.  *See Gutierrez*, 274 F.3d at 1259-60;

17   *Singh v. Gonzalez*, 502 F.3d 1128, 1129 (9th Cir. 2007).

18         Although parties' positions on individual matters may be more or less justified, the

19   EAJA "favors treating a case as an inclusive whole, rather than as atomized line items."

20   *Al-Harbi*, 284 F.3d at 1084-85 (internal quotation marks and citation omitted).  The court

21   can also consider any "extraneous circumstances bearing upon the reasonableness of the

22   government's decision which can include relevant legal or factual precedents." *Medina*

23   *Tovar v. Zuchowski*, 41 F.4th 1084, 1090 (9th Cir. 2022) (cleaned up).

24   **III.    DISCUSSION**

25         The Government does not dispute that Al-Sedeai was the prevailing party and that

26   no special circumstances exist that would justify a denial of fees and expenses.  *See*

27

28

21-cv-00296-GPC-MDD

1    Opposition.  Instead, the Government argues that its position was substantially justified,

2    and that in any case, the fees calculation by Plaintiff's Counsel is unreasonable.  *See id.*

3    **A. Substantially justified**

4    The Government's position here encompasses (a) the IJ's order in denying bond to

5    Al-Sedeai and (b) the litigation positions that the Government took in defending the IJ's

6    order and opposing the petition for writ of habeas corpus.[3]  In arguing the

7    unreasonableness of the Government's position, Plaintiff brings forth two major reasons:

8    that the IJ and the Government incorrectly placed the burden of proof on Plaintiff to

9    prove he was not a flight risk or a danger; and that the IJ and the Government

10   inappropriately discriminated against Plaintiff based on his nationality and hometown.[4]

11   Mot. at 24-26, 30-35.  The Court takes each in turn.

12

13   _____

14

15   [3] Contrary to what Plaintiff argues, the Government's position does *not* include the actions of
governmental officers that occurred prior to the bond hearing before the IJ.  Plaintiff's Motion expounds

16   at length about the actions of the FBI, DHS, and the BIA (pre-bond hearing), and argues that this
"collective pre-litigation position among the several agency levels… gave rise to this Court's order for

17   writ of habeas corpus."  That is a misunderstanding of the Court's order.  The Court did not grant habeas
because of the actions of government officers that occurred *prior* to the bond hearing in front of the IJ.

18   *See* ECF No. 6.  Instead, the Court's order was keenly focused on the IJ placing the burden of proof on
Plaintiff during the bond hearing.  ECF No. 6 at 6-11.  In fact, the Court again emphasized this in its

19   subsequent order staying the Motion.  ECF No. 22 at 6 n.2 ("The Government's conduct during
interrogations and searches is not relevant to recovery under the EAJA.").  Now, as then, the Court finds

20   that the Government's "position" here refers only to the Government's litigation position before the
District Court and the IJ's actions in denying bond to Plaintiff; the actions by other governmental

21   officers are not included as part of the Government's "position."

22   [4] In its Reply, Plaintiff argues that Plaintiff's EAJA motion is timely because it was filed 28 days after

23   the Ninth Circuit ordered the Government's appeal dismissed.  Reply at 4.  An EAJA motion must be
filed 30 days from the date of entry of final judgment.  28 U.S.C. § 2412(d)(1)(B).  The Ninth Circuit

24   has held "final judgment" to mean the date on which a party's case has met its "final demise," such that
there is no longer any possibility that the district court's judgment is open to attack; the 30 days only

25   begins to run upon expiration of the period of filing a petition for writ of certiorari with the Supreme
Court.  *Al-Harbi*, 284 F.3d at 1084.  The Court finds nothing in the Government's Response indicating

26   that the Government contested the timeliness of this EAJA motion.  *See* Response at 6.  The only

27   utterance from the Government on this matter is the following single sentence: "On February 18, 2022,

28

1             1. <u>Allocation of burden of proof in bond hearings</u>

2          Plaintiff argues that the Government, in the IJ's decision to deny bond and in the

3 litigation position defending the IJ's decision, was not substantially justified in placing

4 the burden of proof on Plaintiff to prove that he was not a flight risk, national security

5 concern, or a danger to the community. Plaintiff points to the Ninth Circuit's holding in

6 *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), which he believes squarely addresses the

7 issue, while the Government argues that the Supreme Court's decision in *Jennings v.*

8 *Rodriguez*, 583 U.S. 281 (2018), created ambiguity on how much of *Singh*'s holding

9 survives. This Court, for the reasons below, finds that the Government acted reasonably

10 in the face of changing Ninth Circuit case law, and therefore was substantially justified.

11          To fully answer this, it is imperative to take a tour through the twists and turns of

12 the caselaw in the Ninth Circuit regarding bond hearings in the immigration detention

13 context.

14          First, in *Casas-Castrillon v. Dep't of Homeland Security,* 535 F.3d 942 (9th Cir.

15 2008), the Ninth Circuit addressed a challenge to detention under § 1226(c). [5] The

---

Petitioner filed the instant motion before the mandate had issued." *Id.* The Court does not construe this as any challenge to the timing of this Motion, and in any case, finds that the Motion was timely filed.

[5]    8 U.S.C. § 1226 provides the general authority and process for detaining aliens who are eligible for removal. The Section distinguishes between "two different categories of aliens." *Jennings*, 583 U.S. at 288.

    Section 1226(a) is the "default rule" and gives the Attorney General broad discretion in detaining an alien pending a decision on whether the alien is to be removed from the U.S. *Id.* If a person is apprehended under Section 1226(a), an ICE officer makes the initial custody determination. 8 C.F.R. § 236.1(c)(8). If the officer determines that the alien should be detained, the detainee may then request a bond redetermination hearing before an IJ at any time before a removal order becomes final. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19. At this hearing, if the detainee demonstrates by a preponderance of the evidence that he is not a national security threat, a danger to the community, or a flight risk, the IJ will order his release. *See Matter of Guerra*, 24 I & N. Dec. 37, 40 (BIA 2006). If denied bond, an individual can also request an additional (second) bond hearing whenever she experiences a material change in the circumstances. *See* 8. C.F.R. § 1003.19(e).

21-cv-00296-GPC-MDD

1   petitioner Casas had been mandatorily detained under § 1226(c), and while he sought

2   review of his removal order, he was detained for seven years without a bond hearing.

3   *Casas-Castrillon*, 535 F.3d at 944-46.  He filed a habeas petition, and the Ninth Circuit

4   concluded that once the BIA had dismissed the detainee's appeal, "detention authority

5   *shift[s]* to § 1226(a)."  *Id*. at 947 (emphasis added).  Then, relying on the canon of

6   constitutional avoidance, the Court held that §1226(a) must be construed as requiring a

7   bond hearing, and thus Casas was entitled to a bond hearing, like all §1226(a) detainees.

8   *Id*. at 951-52.  The Court later extended its holding in *Casas* to any alien detained under

9   §1226(c) for more than six months.  *Rodriguez v. Robbins*, 715 F.3d 1127, 1138-39 (9th

10  Cir. 2013) (quotations omitted).

11          In *Singh v. Holder*, the Ninth Circuit analyzed exactly what kind of procedure was

12  constitutionally required for such prolonged-detention "*Casas* hearings."[6]  *Singh v.*

13  *Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).  *Singh* also involved a noncitizen who was

14  detained without bond under § 1226(c) and received a "*Casas* hearing" approximately 16

15  months after he was first detained.  *Id*. at 1201.  The Court held that the government must

16  prove by clear and convincing evidence that the alien is a flight risk or a danger to the

17  community to justify a denial of bond, and based this conclusion on general principles of

18  procedural due process.  *Id*. at 1203-05.

19

20

21

22          "Section 1226(c), on the other hand, carves out a class of aliens for whom detention is
    mandatory." *Rodriguez Diaz*, 53 F.4th at 1197.  On its face, there is no opportunity for release on bond.
23  *See* 8 U.S.C § 1226(c); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008).  The U.S.
    Supreme Court upheld the constitutionality of mandatory detention under § 1226(c) in *Demore v. Kim*,
24  538 U.S. 510 (2003).

25  [6] "*Casas* hearings" refer to the type of bond hearing at issue in *Casas*: one afforded to mandatorily
    detained noncitizens (i.e., initially detained under§ 1226(c)) who had not yet received a bond hearing
26  after their detention had become prolonged while awaiting judicial review of their removal order.  *See*
    *Rodriguez v. Robbins*, 715 F.3d 1127, 1134-35 (9th Cir. 2013).
27

28

1    Then, in 2018, the U.S. Supreme Court issued its holding in *Jennings v. Rodriguez*.

2  This would "substantially upend the [Ninth C]ircuit precedent" just mentioned.

3  *Rodriguez Diaz*, 53 F.4th at 1200.   In *Jennings*, the Supreme Court reversed the Ninth

4  Circuit decision in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), and in doing so,

5  reversed "some of the prior circuit precedent on which" *Robbins* was based.  *Id.*

6  *Jennings* held that the Ninth Circuit had misapplied the canon of constitutional avoidance

7  because its interpretation of §§ 1226(a) and (c), as requiring periodic bond hearings

8  during prolonged detention, was implausible and lacked "any arguable statutory

9  foundation."  *Jennings*, 583 U.S. at 842-44.  The Supreme Court found simply no

10  statutory support for interpreting § 1226(c) as ceasing to govern mandatorily detained

11  noncitizens after six months of detention.  *Id.* at 842-43, 846.  As such, there was no

12  "shifting" to § 1226(a) authority during prolonged detention, as *Casas* had earlier held.

13  There was also no support from the text of § 1226(a) itself that required periodic bond

14  hearings.  *Id.* at 847.  The Supreme Court did not reach whether these bond hearings were

15  constitutionally required.  *Id.* at 851.

16    A few years later, in *Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020), the

17  Ninth Circuit held that despite *Jennings*, the procedural requirements for bond hearings

18  imposed by prior circuit precedent, including *Singh*, remained in place.  *See Aleman

19  Gonzalez*, 955 F.3d at 765-66.  The Court reasoned that *Jennings* involved statutory

20  provisions other than the one at issue in *Aleman Gonzalez*, namely § 1231(a)(6), and thus

21  did not preclude reading procedural requirements into § 1231(a)(6) as a matter of

22  statutory interpretation.  *Id.* at 777-78.  The Court also emphasized that *Singh* was

23  decided on constitutional grounds, and that *Jennings* left open any constitutional

24  questions posed by prolonged detention.  *Id.* at 781.

25    After *Jennings* and *Aleman Gonzalez*, the Ninth Circuit took up the question of

26  what procedures were constitutionally required to attach to a bond hearing for a

27

28                                                                21-cv-00296-GPC-MDD

noncitizen detained under § 1226(a).  *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022).  The parties dispute whether and how *Rodriguez Diaz* is relevant to the disposition of this question.  Clearly, in determining whether the Government's position was substantially justified, the Court must only look at the legal landscape as it existed <u>at the time</u> of the Government's actions.  *See Meza-Vasquez*, 993 F.3d at 729 (the court looks to "controlling law at the time the [government] decisions were rendered").  *Rodriguez Diaz* was decided in November 2022, more than a year after the IJ denied Plaintiff bond and the Government opposed Plaintiff's habeas petition.  The holding in *Rodriguez Diaz*, therefore, is not directly instructive for the Court's analysis of substantial justification. The Court looks to *Rodriguez Diaz*, however, because the Ninth Circuit provides a helpful overview and interpretation of the legal landscape <u>at the time</u> of the Government's actions in this case, namely the period after *Jennings v. Rodriguez* leading up to *Rodriguez Diaz*.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit considered an appeal from Aroldo Rodriguez Diaz, a citizen of El Salvador who was detained pursuant to 8 U.S.C § 1226(a) and denied bond by an IJ, who concluded that Rodriguez Diaz posed a danger to the community due to his gang affiliation.  *Rodriguez Diaz*, 53 F.4th at 1195.  Rodriguez Diaz claimed that his continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, the government should have borne the burden of proof by clear and convincing evidence at his (second) bond redetermination hearing. [7] *Id.*  To address this question, the Court surveyed the long line of its cases in this area, many "key aspects" of which are "no longer good law."  *Id*. at 1196.  "Unencumbered by binding circuit precedent" as to detention under § 1226(a), the Court ultimately

---

[7] Rodriguez Diaz asked for this second bond hearing because under § 1226(a), a detainee can seek additional bond hearings whenever they experience a material change in circumstances warranting a redetermination of custody status.  *See* 8 C.F.R. § 1003.19(e).

1  concluded that the Due Process Clause did not entitle Rodriguez Diaz to a second bond

2  hearing at which the government bore the burden of proof by clear and convincing

3  evidence.  *Id.* at 1203.

4        The *Rodriguez Diaz* court reasoned that *Singh* was inapposite because although

5  *Singh* relied on the Due Process Clause in its holding, it "did so in service of an implied

6  statutory right to a bond hearing for persons detained under § 1226(c) – an implied right

7  that the Supreme Court has now rejected" under *Jennings*.  *Rodriguez Diaz*, 53 F.4th at

8  1202.  Furthermore, *Singh* dealt with a noncitizen who was detained under § 1226(c);

9  Rodriguez Diaz (along with Plaintiff in this case) was detained under § 1226(a).  Thus, to

10  the extent *Singh* remined good law post-*Jennings*, the Court questioned how much of

11  *Singh* would even apply here because "*Singh* did not purport to establish a freestanding

12  set of constitutionally mandated procedures that would apply to any detained alien."  *Id.*

13  at 1196, 1202.  According to the Court, the Ninth Circuit has "never held that *Singh*

14  provided the constitutional baseline for persons like Rodriguez Diaz, who were never

15  mandatorily detained and who have been subject to § 1226(a) and its implementing

16  regulations throughout their detention."  *Id*. at 1203.

17        Since *Jennings* gutted much of the statutory interpretation that led up to *Singh*, the

18  question remained – and still remains for the Ninth Circuit and Supreme Court to decide

19  – whether a § 1226(a) detainee is entitled to a bond hearing as a matter of constitutional

20  due process and if so, what procedures are constitutionally required to attach to such

21  hearings.

22        Here, the Government was faced with this legal uncertainty in the post-*Jennings*

23  landscape.  It acknowledged this uncertainty in its opposition to the habeas petition.  *See*

24  ECF No. 3 at 7.  "As recently noted, '[n]o circuit court has addressed the allocation of the

25  burden of proof in § 1226(a) bond hearings post-*Jennings*,' *Brito v. Barr*, 415 F. Supp. 3d

26  258, 266 (D. Mass. 2019)…"  *Id.*  The Government argued that *Singh v. Holder* was

27

28

1  distinguishable because it concerned "extended detention" and "petition-for-review

2  proceedings." *Id.* In other words, *Singh* involved a *Casas* hearing. And while there were

3  Supreme Court rulings about due process protections for aliens against "indefinite"

4  detention, citing to *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Government

5  noted that there were no Supreme Court decisions that required the government, as a

6  constitutional matter, to prove flight risk and/or danger at immigration bond hearings.

7  Thus, in placing the burden of proof on Plaintiff, the Government was substantially

8  justified, even if it ultimately lost on the merits for the habeas petition in front of this

9  Court.

10        *Rodriguez Diaz*, as mentioned, explores the uncertainty left by *Jennings* on cases

11  exactly like the one in front of the Court: the constitutional procedures for a § 1226(a)

12  detainee's statutorily-granted bond hearing. And in that sense, *Rodriguez Diaz* aligned

13  with the Government's position here that *Singh* did not answer what the government must

14  do (or not do) for these § 1226(a) bond hearings. Subsequent caselaw that aligns with the

15  government's position can bolster the finding that the position was substantially justified

16  if the government contested the issues on the same grounds "on which those [subsequent]

17  cases were decided. *See Abela v. Gustafson*, 888 F.2d 1258, 1265 (9th Cir. 1989). Thus,

18  *Rodriguez Diaz*, while decided more than a year after the events of this case, provides

19  some support for the reasonableness of the Government's position.

20        Plaintiff and the Government each provide their own string cites of district court

21  cases to support their position on whether the Government was substantially justified.

22  *Compare Perez v. McAleenan*, 435 F. Supp. 3d 1055 (N.D. Cal. 2020) (holding that due

23  process requires that the government bear the burden at an immigration bond hearing);

24  *Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571, 576 (N.D. Cal. 2020) (same); *Darko v.

25  Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018) (same) *with Mathurin v. Searls*, No.

26  19-cv-6885, Doc. 36 at 12 (W.D.N.Y. Aug. 12, 2021) (finding substantial justification in

27

28

21-cv-00296-GPC-MDD

the wake of the ambiguity left by *Jennings*); *Viruel Arias v. Choate*, 2022 WL 4467245, at \*4 (D. Colo. Sept. 26, 2022) ("courts are split on how this burden should be allocated in bond hearings for non-citizens detained under § 1226").  For the Court, this clash of cases emphasizes the open nature of this question.  Furthermore, just because a court decides against the government's position does not make the government's position substantially unjustified.  "Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." *Pierce*, 487 U.S. at 568.  And in any case, district court decisions are only persuasive authority on IJs, *see infra*.

Plaintiff also argues that it is not clear *Singh* was overruled by *Jennings* because "[s]ome tension between the intervening higher authority and prior circuit precedent" is not enough to overrule circuit precedent.  Reply in Support of Supplemental Briefing at 5 (citing *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019) (internal citations and quotations omitted)).  This elides the point.  Under the substantial justification analysis, the court must merely look to see if the Government was acting reasonably.  "The test is not whether the government was correct… A position that was not contrary to clearly established law is thus substantially justified." *Meza-Vazquez*, 993 F.2d at 729 (internal citations omitted).  The fact that the law on this matter is *not* "clearly established" because of "some tension" between the higher courts actually supports the reasonableness of the Government's litigation position, because greater ambiguity allows for greater range of the reasonable.  What matters is <u>not</u> parsing exactly how much of *Singh* survives *Jennings*; what matters is whether in the face of ongoing ambiguity, the Government acted reasonably. The Court finds that it did.

For the same reasons, the Court also finds that the IJ acted reasonably. An IJ is required to follow BIA precedent, the Attorney General, and the circuit court of appeal that has geographic jurisdiction.  *Matter of Garcia*, 28 I. & N. Dec. 693, 695 (B.I.A.

21-cv-00296-GPC-MDD

1   2023).  Neither the BIA nor the IJ is required to follow the decision of a United States

2   District Court.  *Matter of K-S-*, 20 I. & N. Dec. 715 (B.I.A. 1993).  Although there may

3   be considerations of comity between the IJ and district courts within the same

4   geographical circuit, the holdings in district courts are merely persuasive on the IJ.  *See*

5   *id.* at 719.

6          According to BIA precedent and regulations, Plaintiff had the burden of proof at

7   his initial bond hearing.  8 C.F.R. § 236.1(c)(8) ("the alien must demonstrate… that such

8   release would not pose a danger to property or persons"); *see Matter of Fatahi*, 26 I&N

9   Dec. 791, 793 (BIA 2016) ("An alien who seeks a change in custody status must establish

10  to the satisfaction of the Immigration Judge and the Board" that he is not a danger to the

11  public or likely to abscond).

12         Here, in his bond memorandum, the IJ cited *Matter of Adeniji*, 22 I&N Dec. 1102

13  (BIA 1999), stating that "a respondent in a custody hearing under section 236(a) of the

14  Immigration and Nationality Act must establish to the satisfaction of the immigration

15  judge that he does not present a danger to persons or property, is not a threat to national

16  security, and does not pose a risk of flight."  ECF No. 3, Exhibit p. 15.  The IJ clearly

17  believed he was following BIA precedent, and he was substantially justified in believing

18  that there was no contrary circuit precedent because, as determined above, post-*Jennings*,

19  there had been no Ninth Circuit decisional law that squarely imposed procedural

20  requirements on bond hearings for § 1226(a) detainees.

21                2. Equal Protection Clause

22         Plaintiff also argues that the IJ did not provide adequate reasoning for deeming

23  Plaintiff to be a national security threat apart from his national origin – violating equal

24  protection – and that the Government, in its litigation position, unreasonably continued to

25  defend the IJ's decision and rationale.  The Court will now examine the IJ's actions in

26

27

28

finding that Plaintiff posed a national security concern and a flight risk, and determine whether the IJ was reasonable to find him so.

An alien placed in removal proceedings and detained by the federal government does not have a constitutional right to be released on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 39 (B.I.A. 2006) (citing *Carlson v. Landon*, 342 U.S. 524, 534 (1952)). However, for those detained under § 1226(a), the Attorney General has the authority to grant bond, should the alien's circumstances warrant it. *See* 8 U.S.C. § 1226(a). The Attorney General has extremely broad discretion to decide what factors are relevant to a custody redetermination, and how much weight to give to those factors. *Matter of Guerra*, 24 I. & N. at 40. An IJ, acting under the Attorney General, "must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). The IJ may look to a number of factors in determining whether bond should be granted, including:

> (1) whether the alien has a fixed address in the United States;
> (2) the alien's length of residence in the United States;
> (3) the alien's family ties in the United States, and whether they may entitle the alien to residence permanently in the United States in the future;
> (4) the alien's employment history;
> (5) the alien's record of appearance in court;
> (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses;
> (7) the alien's history of immigration violations;
> (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and
> (9) the alien's manner of entry to the United States.

*Matter of Guerra*, 24 I. & N. at 40. IJs, in their broad discretion, may choose to give greater weight to one factor over another, as long as the decision is "reasonable." *Id.* As noted, under BIA precedent, "[t]he burden is on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." *Matter of Guerra*, 24 I. & N. at 40.

17

21-cv-00296-GPC-MDD

1  Generally, the IJ renders a decision orally.  *See* U.S. Dep't of Just., *Immigration Court*

2  *Practice Manual*, § 9.3 (2023).  If the parties decide to pursue an appeal, only then does

3  the IJ typically prepare a written bond memorandum based on their notes from the

4  hearing.[8]  *Id.*

5      Here, the IJ considered the factors stated above and denied Plaintiff bond,

6  specifically citing "[n]ational security concerns raised by the Government… [and that Al-

7  Sedeai] has not carried his burden to show [he is] not a danger to the community or threat

8  to national security."  ECF No. 1-4 at 8.  Once the immigration court was notified that

9  Al-Sedeai filed an appeal with the BIA, the IJ, following DOJ protocol, issued a bond

10 memorandum to provide additional information explaining the court's decision.  ECF No.

11 3-1 at 16.

12     In this bond memorandum, the IJ concluded that Plaintiff was "a national security

13 concern and also an extreme flight risk that [could not] be mitigated by bond."  *Id.* at 18.

14 For support, the IJ cited to a Department of Homeland Security ("DHS") memorandum

15 from the Federal Bureau of Investigations ("FBI"), stating that detention was necessary to

16 further investigate Plaintiff's "past residence in an area with heavy terrorist infestation."

17 *Id*. at 17.

18     Because the IJ has broad discretion to give greater weight to any factor he sees fit,

19 the IJ was substantially justified in giving significant weight to the DHS memorandum in

20 his decision.  Further, this greater weight was reasonable because the IJ cited to binding

21 BIA precedent directing IJs to consider sources from the Executive Branch with relevant

22

23

24 [8] Plaintiff in his Motion for Attorneys' Fees and Costs characterizes the bond memorandum as
"retroactive… raising unsupported claims which were neither addressed or cited in the IJ order."  Mot.

25 at 9.  However, Plaintiff provides no reason to conclude that the IJ, in issuing a "retroactive" order, was
acting in an inappropriate or even unreasonable manner.  In fact, the DOJ protocol itself indicates that

26 IJs typically issue a bond memorandum (with more comprehensive reasoning) only after there is an
appeal to the BIA.

27

28

21-cv-00296-GPC-MDD

1    expertise "in all future bond proceedings." *See Matter of D-J-*, 23 I. & N. at 581 ("In

2    bond proceedings involving aliens seeking to enter the United States illegally, where the

3    Government offers evidence from sources in the Executive Branch with relevant

4    expertise establishing that significant national security interests are implicated,

5    Immigration Judges and the Board of Immigration Appeals shall consider such

6    interests.").

7         The IJ also concluded that Plaintiff posed a flight risk. ECF No. 3-1 at 18. For

8    support, the IJ noted that Plaintiff "has no fixed address, length of residence, nor

9    employment history in the United States." *Id.* at 17. Even though Plaintiff did submit

10   evidence to support his family ties in the United States,[9] the IJ noted that none of these

11   individuals could extend immigration benefits to Plaintiff. *Id.* Further, the IJ determined

12   that Plaintiff's proposed sponsors made insufficient income to adequately sponsor him,

13   and any other listed sponsors appeared to not have a close relationship with Plaintiff. *Id.*

14   Additionally, the IJ noted that Plaintiff's manner of illegal entry, despite his

15   understanding of legal immigration procedures from having worked for the Qatari and

16   American embassies in Yemen, demonstrated "a disregard for the law." *Id.* at 18. The

17   IJ's reliance on *Guerra* factors (1)-(3) and (9) as a basis for determining whether Plaintiff

18   was a flight risk was reasonable, especially in light of the broad discretion allowed under

19   § 1226(a). *See, e.g., Matter of R-A-V-P-*, 27 I. & N. Dec. 803 (B.I.A. 2020) ("The

20   respondent's limited avenue for relief, combined with his other minimal ties to the United

21   States, support the Immigration Judge's determination that the respondent poses a high

22   flight risk and should be held without bond pending the outcome of his removal

23   proceedings.").

24

25   _____

26   [9] His sister is a lawful permanent resident, her husband is a U.S. citizen, and his wife's brother is a U.S.
     citizen. ECF No. 3-1 at 17-18.

27

28                                                                    21-cv-00296-GPC-MDD

Because the IJ had a reasonable basis for denying Al-Sedeai bond, his conclusion was substantially justified. *See Renee v. Duncan*, 686 F.3d 1002, 1017 (9th Cir. 2012) (interpreting substantial justification to encompass reasonable positions). Furthermore, as already discussed, the IJ acted reasonably, and was substantially justified, in placing the burden of proof on Plaintiff. Under this burden-of-proof framework, it is even more reasonable that the IJ would conclude that Plaintiff was a national security concern and a flight risk: the IJ reasonably determined that Plaintiff's proffered evidence was insufficient to meet his burden of proof. The Court therefore finds that the IJ, in all of his actions (placing the burden of proof on Plaintiff, analyzing the *Guerra* factors, and concluding that Plaintiff should be denied bond), acted reasonably and thus was substantially justified.

## B. Reasonable attorneys' fees

Because the Court has determined that the Government was substantially justified in its prelitigation and litigation positions, and therefore denies the motion for attorneys' fees, the Court does not need to reach the reasonableness of the proposed fees here.

## IV. CONCLUSION

Based on the foregoing, the Court DENIES the Motion for Attorneys' Fees.

**IT IS SO ORDERED.**

Dated: March 25, 2025

Hon. Gonzalo P. Curiel
United States District Judge